TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JULIA HU (Cal. Bar No. 338226)
Assistant United States Attorney
General Crimes Section
MARIA JHAI (Cal. Bar No. 283059)
Assistant United States Attorney
Terrorism and Export Crimes Section
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3802/4138
        Facsimile: (213) 894-6269/0141
        E-mail:    julia.hu@usdoj.gov
                   maria.jhai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-75-MCS-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF ITS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN THE TRIAL OF DEFENDANT YI CHEN |
| v. | |
| YI CHEN, aka "Brian Chen," | |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Julia Hu and Maria

//
//
//
//
//

Jhai, hereby submits its reply in support of its proposed findings of fact and conclusions of law, filed on February 7, 2022, in the trial of defendant YI CHEN in the above captioned case.

Dated: March 7, 2022                    Respectfully submitted,

                                        TRACY L. WILKISON
                                        United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        JULIA HU
                                        MARIA JHAI
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   DEFENDANT CHEN IS GUILTY OF IMMIGRATION DOCUMENT FRAUD, AS
      CHARGED IN COUNTS NINE THROUGH NINETEEN........................2

      A.    The Requisite Intent is Knowledge........................2

      B.    The Government Proved that Defendant Acted with the
            Requisite Intent........................................5

III.  DEFENDANT CHEN IS GUILTY OF CONSPIRACY, AS CHARGED IN COUNT
      ONE ..........................................................9

      A.    The Government Proved That Defendant Acted with the
            Requisite Intent........................................9

      B.    Defendant's Attacks on the Sufficiency of the Evidence
            Are Meritless..........................................13

IV.   DEFENDANT CHEN IS GUILTY OF AGGRAVATED IDENTITY THEFT, AS
      CHARGED IN COUNT TWENTY-ONE...................................15

i

**TABLE OF AUTHORITIES**

**Cases**                                                    **Page(s)**

Browder v. United States,
   312 U.S. 335 (1941) ............................................... 3

Flores-Figueroa v. United States,
   556 U.S. 646 (2009) .............................................. 15

Rosemond v. United States,
   572 U.S. 65 (2014) ............................................. 8, 9

United States v. Baker,
   63 F.3d 1478 (9th Cir. 1995) .................................... 10

United States v. Dashney,
   937 F.2d 532 (10th Cir. 1991) .................................... 3

United States v. Doe,
   842 F.3d 1117 (9th Cir. 2016) ................................... 15

United States v. Espinoza-Valdez,
   889 F.3d 654 (9th Cir. 2018) .................................... 14

United States v. Fairchild,
   990 F.2d 1139 (9th Cir. 1993) .................................... 4

United States v. Gabriel,
   125 F.3d 89 (2d Cir. 1997) ............................... 2, 3, 10

United States v. Gagarin,
   950 F.3d 596 (9th Cir. 2020) .................................... 17

United States v. Giese,
   597 F.2d 1170 (9th Cir. 1979) ................................... 13

United States v. Kaplan,
   836 F.3d 1199 (9th Cir. 2016) ............................... 10, 11

United States v. Kissel,
   31 S. Ct. 125 (1910) ............................................ 14

United States v. Loya,
   807 F.2d 1483 (9th Cir. 1987) ................................... 16

United States v. Michaels,
   796 F.2d 1112 (9th Cir. 1986) ................................ 3, 10

United States v. Quattrone,
    441 F.3d 153 (2d Cir. 2006) ....................................... 2

United States v. Ryan-Webster,
    353 F.3d 353 (4th Cir. 2003) ....................................... 6

United States v. Singh,
    979 F.3d 697 (9th Cir. 2020) ....................................... 2

United States v. Ubaldo,
    859 F.3d 690 (9th Cir. 2017) ................................... 8, 13

United States v. Vaccaro,
    816 F.2d 443 (9th Cir. 1987) ....................................... 3

United States v. Valdez,
    594 F.2d 725 (9th Cir. 1979) ....................................... 6

United States v. Wu,
    419 F.3d 142 (2d Cir. 2005) ....................................... 6

**Statutes**

18 U.S.C. § 2(b) .......................................... 2, 10, 13

18 U.S.C. § 924(c) ............................................... 9

18 U.S.C. § 1546(a) ...................................... 2, 11, 15

**Model Jury Instructions**

Ninth Circuit Model Criminal Jury Instruction 3.18................. 16

Ninth Circuit Model Criminal Jury Instruction 4.2.............. 8, 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3       The government proved beyond a reasonable doubt that defendant

4  YI CHEN ("defendant" or "defendant CHEN") and co-defendant YIXIN LI

5  ("LI") engaged in a fraudulent scheme to get Chinese nationals into

6  U.S. colleges, knowingly causing those colleges to issue Form I-20s

7  to their clients.  Defendant is thus guilty as charged of immigration

8  document fraud, conspiracy, and aggravated identity theft.

9  Defendant's post-trial briefing challenges whether the government has

10  met its burden of establishing defendant's guilt based on a single

11  disputed legal issue: the requisite mens rea.

12       Defendant does not dispute that he engaged in fraud, that he

13  knew his clients would get Form I-20s because of the fraud, or that

14  his clients indeed obtained Form I-20s as charged.  Defendant's

15  entire opposition is premised on the novel theory that the government

16  was required to prove that he acted with the specific motive or goal

17  of getting Form I-20s for his clients, as opposed to getting them

18  into college knowing that the Form I-20s would follow.  (Dkt. 208

19  ("Def. Opp.") at 4.)  However, defendant cites not a single authority

20  to support his novel reading of the immigration document fraud,

21  aiding and abetting, or conspiracy statutes.  He also ignores the

22  numerous cases cited establishing that defendant is guilty of

23  immigration document fraud if he knowingly obtained Form I-20s,

24  knowing they had been procured by fraud.  And contrary to defendant's

25  mistaken reading, neither the aiding and abetting nor the conspiracy

26  statutes impose a higher mens rea than the substantive offense.

27  Because the evidence of guilt is undisputed under the government's

28  correct reading of the law, defendant is guilty of all counts.

## II.   DEFENDANT CHEN IS GUILTY OF IMMIGRATION DOCUMENT FRAUD, AS CHARGED IN COUNTS NINE THROUGH NINETEEN

### A.   The Requisite Intent is Knowledge

Defendant contends that the government was required to prove that he acted with the specific purpose of obtaining or causing Form I-20s to issue.  (Def. Opp. 4.)  However, defendant's theory finds no support in either the immigration document fraud or aiding and abetting statutes.

The plain text of 18 U.S.C. § 1546 makes it clear that the requisite intent is knowledge.  See 18 U.S.C. § 1546(a) (prohibiting "knowingly . . . obtain[ing] . . . [a] [Form I-20], knowing it . . . to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained" (emphasis added)).  Indeed, defendant agrees that § 1546(a) requires proof only that he knowingly obtained I-20s, knowing that they were obtained by fraud.  (See Def. Opp. 13.)

Defendant is equally guilty of immigration document fraud under 18 U.S.C. § 2(b) if he "willfully caused" Form I-20s to be obtained. Defendant apparently misconstrues the term "willfully" to impose a higher mens rea of specific purpose or intent.  (Def. Opp. 14.)  Not so.  As the government explained in its opening brief, § 2(b) requires proof only that defendant "intentionally cause[d] another to commit" the actus reus of the substantive offense.  United States v. Gabriel, 125 F.3d 89, 101 (2d Cir. 1997), overruling on other grounds recognized by United States v. Quattrone, 441 F.3d 153 (2d Cir. 2006); see United States v. Singh, 979 F.3d 697, 717–18 (9th Cir. 2020), cert. denied sub nom. Matsura v. United States, 210 L. Ed. 2d 833 (May 24, 2021) ("Under [§ 2(b)] liability, the actus reus element

2

merges with the mens rea element to focus liability on the person harboring the criminal intent."). "Intentionally" in this context means only that defendant "kn[ew] what he [wa]s doing." United States v. Dashney, 937 F.2d 532, 538 (10th Cir. 1991) (emphasis added); see also Browder v. United States, 312 U.S. 335, 341 (1941) (construing "willfully" in the passport fraud statute to mean "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent").

In causing another to commit the actus reus, defendant must harbor the same mens rea as the substantive offense. See Gabriel, 125 F.3d at 101 ("The most natural interpretation of section 2(b) is that a defendant with the mental state necessary to violate the underlying section is guilty of violating that section if he intentionally causes another to commit the requisite act."); United States v. Vaccaro, 816 F.2d 443, 453-54 (9th Cir. 1987) ("Because an aider and abettor is punished as a principal, the proof must encompass the same elements as would be required to convict any other principal." (cleaned up)). Contrary to defendant's mistaken reading, § 2(b) does not import a higher intent requirement than the substantive offense. See United States v. Michaels, 796 F.2d 1112, 1118 (9th Cir. 1986) (rejecting the argument "that the specific inclusion of § 2(b) in the indictment somehow alters the nature of the offense with which [defendant] is charged").

In other words, the mens rea for aiding and abetting immigration document fraud is the same as the mens rea for the substantive offense. Defendant does not dispute the elements for the substantive offense. (Def. Opp. 13.) Thus, taken together, § 1546 and § 2(b) require proof that (1) defendant knowingly obtained, or willfully

3

1   caused to be obtained, a Form I-20; and (2) defendant knew the Form

2   I-20 to have been procured by means of any false claim or statement,

3   otherwise procured by fraud, or unlawfully obtained.

4        United States v. Fairchild, 990 F.2d 1139 (9th Cir. 1993), which

5   the parties cited in its purposed jury instruction (Dkt. 118 at 54),

6   is wholly consistent with the government's reading of § 2(b).   There,

7   the defendant, an employee of a government contractor, was charged

8   under § 2(b) and § 1001 with submitting false statements to the

9   General Services Administration ("GSA").   The false statements took

10  the form of Quality Approved Manufacturer Agreement program ("QAMA")

11  certificates, which certified that each shipment of goods complied

12  with the government contract and waived government inspection of the

13  shipment.  Fairchild, 990 F.2d at 1140.  The Ninth Circuit held that

14  there was sufficient evidence that the defendant "acted voluntarily

15  and intentionally and with the purpose of causing false QAMA

16  certificates to be filed because he continued to order packing" in a

17  non-compliant manner "after he knew that false certificates were

18  being signed and supplied to the GSA."  Id. (emphasis added).

19  Fairchild did not require proof that the defendant acted with the

20  specific purpose of causing the QAWA certificates to be filed.

21  Similarly, defendant CHEN "evinced the requisite criminal intent" by

22  submitting fraudulent college applications, "with the knowledge that"

23  his clients would consequently be certified as eligible for study in

24  the United States in Form I-20s "and that the certificates

25  necessarily would be false."  Id.

26

27

28

4

**B.    The Government Proved that Defendant Acted with the Requisite Intent**

As set forth in its proposed findings, the government proved beyond a reasonable doubt that defendant submitted or caused to be submitted fraudulent college admissions applications for each of the students named in Counts Nine through Nineteen, knowing that the students would be issued Form I-20s as a result.  (Dkt. 195 ("Gov. PFFCL") at 25-59, 69-92.)  Defendant does not contest that the government proved beyond a reasonable doubt that he knowingly submitted or caused to be submitted fraudulent admissions applications for each of the students named in Counts Nine through Nineteen.  Nor does he contest that the government's evidence, which included defendant's own statements that he first came to the United States on a student visa and started MS Education to help Chinese nationals get into the United States, various MS Education documents purporting to provide information about student visa procedures, and LI's testimony that they knew that schools would issue Form I-20s if their clients got into school, proved beyond a reasonable doubt that defendant knew Form I-20s would be obtained as a result of the fraudulent admissions applications that he engineered.  (See Gov. PFFCL 67-69.)

Defendant's sole defense is that there is insufficient evidence that he himself performed or explicitly agreed to help students specifically with any additional steps needed to get Form I-20s. (Def. Opp. 14-23.)  However, defendant ignores the abundant case law that the government cited establishing that no such evidence is required.  (Gov. PFFCL 65-71.)  Those cases direct courts to focus on "the entire immigration process directed at an ultimate result that

defendant sought when asserting [a] falsehood," and not isolated documents or steps. United States v. Wu, 419 F.3d 142 (2d Cir. 2005) (emphasis added). Courts have upheld fraud convictions based on falsities in a financial affidavit of support in connection with a petition for an alien relative, see id. at 144-46, employment letters filed in connection with seeking an immigrant visa, see United States v. Valdez, 594 F.2d 725, 727-28 (9th Cir. 1979), and certification applications that are prerequisites to getting a visa, see United States v. Ryan-Webster, 353 F.3d 353, 361 (4th Cir. 2003). As these cases make clear, falsities in components of the process of getting an immigration document are as equally criminalized as falsities in the application for the document itself.

Here, the college applications that defendant CHEN egregiously faked were more than just one incremental step in getting student visas; acceptance was the central condition upon which the student visas were granted. See 8 U.S.C. § 1101(a)(15)(F)(i) (permitting the issuance of F-1 visas only for "bona fide student[s] [who are] qualified to pursue a full course of study and who seek[] to enter the United States temporarily and solely for the purpose of pursuing such a course of study"). As set forth in more detail in the government's proposed findings, the Immigration and Nationality Act's ("INA") implementing regulations institute a careful scheme for ensuring that F-1 visas are only granted to foreign nationals who are "bona fide students qualified"--i.e., accepted for admission--to study in the United States. Id. (emphasis added); (Gov. PFFCL 2-10.)

Those regulations permit schools to issue a Form I-20 only upon acceptance of a student based on review of his/her admissions application. See 8 C.F.R. §§ 214.2(f)(1)(i)(A), 214.3(k); (Gov.

PFFCL 3-8.)  Although schools may set their own standards for admission, a complete and truthful application is universally a prerequisite for admission.  (See, e.g., Tr. Ex. 149 at 7; Tr. 148 at 5.)  Thus, fraud in a foreign student's admissions application is fraud in procuring a Form I-20.  Defendant's unduly narrow construction of the immigration fraud statute would provide an end-run for student visa fraudsters, given that there is no way to obtain a Form I-20 directly from an agency.

Defendant is flatly incorrect that the government was required to prove that he participated in "applying for" an I-20, as opposed to for school.  (Def. Opp. 5, 13-22.)  As a threshold matter, the record does not support defendant's characterization that there is a separate "application" for a Form I-20 than for admissions. Defendant misconstrues Special Agent Taylor's testimony to suggest that all schools require a separate "application" or "request" for an I-20 following acceptance.  (Dkt. 208 at 5; Dkt. 164 at 229:20-25.) Agent Taylor did not so testify; rather, he testified that students may have to pay additional fees and deposits following their acceptance before getting an I-20.  (Dkt. 164 at 229:17-19, 23-25.) Moreover, the government presented evidence that defendant CHEN was involved in these additional post-acceptance steps, including submitting financial affidavits and paying fees.  (See, e.g., Gov. PFFCL 36-37, 44, 56-57.)

In any event, it is irrelevant to defendant's guilt that other steps or materials may have been required before a school would issue a Form I-20.  Under § 2(b), defendant CHEN need not have personally performed every aspect of the offense; he is guilty if he "put[] in motion or cause[d] the commission of an indispensable element of the

7

offense."  Ninth Circuit Model Criminal Jury Instruction 4.2 (2022).
Here, defendant put in motion the "indispensable element" of
obtaining Form I-20s by submitting the fraudulent college
applications.  There is no requirement that defendant personally
obtain the I-20s; it is enough that issuance of the I-20s "flowed
naturally or w[as] a direct result" of his conduct.  United States v.
Ubaldo, 859 F.3d 690, 701 (9th Cir. 2017).  That a student may have
taken additional actions necessary to complete the offense and obtain
the I-20 does not break the chain of causation.  See id. (defendants
properly convicted of unlawful weapons importation where they sold
weapons knowing the weapons would be smuggled, even though the buyers
handled the shipping and defendants did not direct them to do so).

Nor was the government required to prove that defendant
explicitly agreed to help the students named in Counts Nine through
Nineteen get Form I-20s or student visas as opposed to getting into a
U.S. school or university.  Defendant makes much of the fact that the
MS Education contracts required payment upon acceptance, rather than
issuance of a Form I-20.  (Def. Opp. 15-16, 18-19.)  For one,
defendant ignores the other language in the contracts proving that MS
Education was involved not only in preparing application materials,
but also visa application materials.  (See, e.g., Tr. Ex. 19 at 1
(requiring the student to submit "supplemental materials" related to
changes in "US visa policy"); Tr. Ex. 21 at 2 (same).)  Moreover, it
is common sense that criminals do not "typically put all the terms of
their fraud in writing."  (Dkt. 166 at 11:18-12:24.)

In any event, the government is not required to prove that the
defendant "affirmatively desire[d]" that his clients would get Form
I-20s.  Rosemond v. United States, 572 U.S. 65, 79 (2014).  In

1  *Rosemond*, the Supreme Court held that aiding and abetting a violation

2  18 U.S.C. § 924(c) did not require that the defendant "affirmatively

3  desire one of his confederates to use a gun."  Id. (emphasis added).

4  Instead, the requisite intent is "active participation in a drug

5  sale . . . (even if the conduct does not extend to the firearm), so

6  long as the defendant had prior knowledge of the gun's involvement."

7  Id. at 82.  Similarly, here, the government was not required to prove

8  that defendant CHEN "affirmatively desire[d]" or promised that his

9  clients would get Form I-20s.  It is sufficient that the government

10 proved beyond a reasonable doubt that defendant CHEN "actively

11 participated" in submitting fraudulent college admissions

12 applications on his clients' behalf with "prior knowledge" that they

13 would get Form I-20s as a result.  Id.

14 **III. DEFENDANT CHEN IS GUILTY OF CONSPIRACY, AS CHARGED IN COUNT ONE**

15     Defendant relies on many of the same mistaken arguments to

16 support his contention that he is not guilty of conspiracy.  In

17 particular, defendant appears to argue that the government proved, at

18 most, that defendant and LI agreed to commit admissions fraud, but

19 did not prove that they agreed to commit immigration document fraud

20 and therefore cannot be guilty of the charged conspiracy.  (See Def.

21 Opp. 1-2.)  This is wrong.  The government proved the conspiracy

22 exactly as charged for the reasons set forth herein.

23     **A.   The Government Proved That Defendant Acted with the**
         **Requisite Intent**

24

25     First--contrary to the premise of defendant's entire

26 argument--the government is not obligated to prove that defendant

27 acted with the specific intent to obtain I-20s, or that defendant and

28 LI specifically agreed to obtain I-20s, because that is not an intent

requirement in the underlying statute itself.  The immigration document fraud statute requires proof that defendant <u>knowingly</u> obtained I-20s, <u>knowing</u> that they were obtained by fraud.  Again, this is undisputed.  (See Def. Opp. 13.)  Like § 2(b), § 371 does not import a different or higher intent requirement.

Specifically, the conspiracy count, like each substantive count, charges CHEN with conspiring to obtain, or willfully causing to be obtained, Form I-20s by fraud.  (Dkt. 1 at ¶ 13 (object of the conspiracy).)  As discussed above (see <u>supra</u> 2-3), § 2(b) does not change the <u>mens rea</u> of the substantive offense.  Rather, it merely requires proof that defendant willfully caused another to commit the <u>actus reus</u>, while defendant himself had the <u>mens rea</u> for the offense--not a different or heightened or more specific <u>mens rea</u>; the <u>same mens rea</u> as the underlying offense.  See 18 U.S.C. § 2(b); <u>Michaels</u>, 796 F.2d at 1118; <u>Gabriel</u>, 125 F.3d at 101.

Likewise, the conspiracy charge does not carry a heightened <u>mens rea</u> requirement.  Proof of conspiracy requires proof of an agreement to violate the law, an overt act, and "the <u>requisite intent to commit the substantive crime</u>."  See <u>United States v. Kaplan</u>, 836 F.3d 1199, 1212 (9th Cir. 2016) (cleaned up) (emphasis added); <u>United States v. Baker</u>, 63 F.3d 1478, 1493 (9th Cir. 1995) ("Establishing a defendant's guilt of conspiracy to commit a substantive crime requires proof of the mens rea essential for conviction of the substantive offense . . . <u>No greater or different intent is necessary</u>.") (cleaned up) (emphasis added).)

Thus, as with the individual substantive counts, the government has proved the requisite intent for the conspiracy count if it shows that CHEN and LI agreed to <u>knowingly</u> obtain, or willfully cause

10

others to obtain, Form I-20s, <u>knowing</u> that the I-20s were obtained by means of fraudulent statements.  <u>See</u> 18 U.S.C. §§ 1546(a), 2(b); <u>Kaplan</u>, 836 F.3d at 1212.  In other words, CHEN and LI had to agree to act with knowledge that the I-20s would have issued as a result of fraud.

That guilty knowledge is indisputably established here.  The record is replete with evidence that CHEN and LI <u>knew</u> that their foreign student clients would get issued I-20s if their fraudulent application services resulted in admission to a school.  LI admitted it.  (Dkt. 189 at 13:8-24.)  CHEN himself came to the United States on a student visa and thus knew about I-20s from personal experience.  (Dkt. 164 at 118:9-22; Tr. Ex. 6-8; Br. Ex. D at 1:2-2:8.)  Advertisements for LI and CHEN's services show their knowledge.  (<u>See</u> Tr. Exs. 30, 61, 64.)  CHEN specifically advertised "Fast issuance for I20 CPT, OPT," as part of his admissions services.  (Dkt. 189 at 36:14-39; Tr. Ex. 61.)  As LI testified, a "fast" I-20 service was designed for students who were about to be terminated from a program and needed an I-20 so they would not lose student visa status. (Dkt. 189 at 38:3-21.)  Likewise, CHEN identified procurement of an I-20 as an express service in at least one contract found on his computer.[1]  (Dkt. 189 at 43:3-44:14; Tr. Ex. 35.)  Other contracts promised to advise students about "visa policy" and "the process of obtaining a visa and application procedures."  (Tr. Ex. 19 at 1; Tr. Ex. 21 at 1.)  MS Education internal documents likewise demonstrate knowledge

---

[1] Exhibit 35 shows CHEN's knowledge.  As discussed below, it is immaterial whether every contract made receipt of an I-20 an explicit condition of payment.  The point is CHEN cannot deny that he understood that he understood that issuance of an I-20 would follow admission.

11

of the visa consequences of admission to schools, and that such knowledge was part and parcel of the business plan. (See Tr. Ex. 17 at 1, 4, 6 (offering "OPT," a program that allows extension of a student visa after graduation); id. at 1, 9 (offering admission services for schools where it was easy to maintain visa status). These are just examples of the evidence of knowledge that an I-20 would issue; there is more in the record. (See Gov. PFFCL 100-101.)

Likewise, the evidence shows indisputably that CHEN and LI knew that the I-20s their clients received were obtained by fraud and false statements in the school applications. The evidence on this point was overwhelming and, again, went virtually unchallenged. Defendant and LI themselves personally engineered the fraudulent applications. This is evidenced by, among other things, LI's testimony about their use of fraudulent tactics, (see, e.g., Dkt. 189 at 28:17-30:12; Dkt. 174 at 30:7-41:23, 44:1-44:190); Jeffrey Gottesfeld's testimony and his lengthy correspondence with CHEN documenting CHEN's payment for fabricated personal statements and letters that were used in student applications, (see Dkt. 180 at 32:4-33:4); the materials for creating counterfeit transcripts stored on CHEN's computer that were also used in multiple students' applications, (see Tr. Exs. 31, 141, 143, 153); and LI's emails to CHEN attaching fraudulent transcripts found in applications submitted on the student's behalf, (Tr. Exs. 44, 44A, 47; Dkt. 166 at 161:16-162:5; Tr. Exs. 198, 200, 219.). (See also Gov. PFFCL 99-100 (summarizing evidence).)

**B.    Defendant's Attacks on the Sufficiency of the Evidence Are Meritless**

Defendant does not appear to contest any of this evidence of guilt.  Rather, he makes a series of legal arguments that the evidence is not sufficient for guilt, which the Court should reject, as follows.

First, as noted above, defendant makes much of his allegation that he and LI did not personally physically obtain the I-20s for their clients, but rather the student may have had to take an additional step to obtain the I-20.  (Def. Opp. 5-6.)  For reasons explained above (see supra 5-9), this is irrelevant.  Defendant is guilty of conspiring to cause Form I-20s to be obtained if he and LI, acting with the requisite knowledge, agreed to submit fraudulent college applications for their clients, thereby "put[ting] in motion" the Form I-20s' issuance.  Ninth Circuit Model Criminal Jury Instruction 4.2 (2022); Ubaldo, 859 F.3d at 701; United States v. Giese, 597 F.2d 1170, 1179 (9th Cir. 1979) (holding that the conspiracy statute encompasses "participation in a conspiracy 'to cause to be committed' a substantive offense" (quoting 18 U.S.C. § 2(b)).

Second, defendant argues that the conspiracy ended--and thus there can be no criminal liability for issuance of the I-20s—-once the applications were submitted.  (See Def. Opp. 6-7, 8-12.)  Defendant, first, tries to make the student contracts co-extensive with the conspiracy, arguing that because contracts did not identify getting a Form I-20 as a promised service and provided that students would pay upon gaining admission and not on receipt of an I-20, that is somehow proof that CHEN and LI did not agree to commit the charged

13

offense.  (Id. at 6-7.)  As a threshold point, it is "not necessary that the conspirators ma[k]e a formal or express agreement."  United States v. Espinoza-Valdez, 889 F.3d 654, 656 (9th Cir. 2018).  The Court can, and should, look for evidence of the parties' agreement outside the contracts.  Indeed, it would be somewhat ridiculous to treat the contracts that defendant used to perpetrate the fraud as limiting his liability just because they do not lay bare all his guilty knowledge.

Defendant's larger point seems to be to try to create an artificial distinction between the fraudulent admissions services and the charged conspiracy.  (See Def. Opp. 6-12.)  To this end, defendant characterizes a student's receipt of the I-20 as merely an incidental "result" of the admissions fraud and somehow not part of the conspiracy or as something that happened only after the conspiracy ended.  (See Def. Opp. 4 (citing United States v. Kissel, 31 S. Ct. 125 (1910).)  Again, this argument fatally misconstrues the charges.  The charged object of the conspiracy is violation of §§ 1546(a), 2(b), that is, knowingly obtaining, or willfully causing to be obtained, Form I-20s, knowing that the I-20s were obtained by means of fraud.  (Dkt. 1 at ¶ 13.)  The fraudulent admissions services are how CHEN and LI obtained the I-20s; indeed, there was no way for them to get I-20s for their clients without getting them into to school.  That CHEN and LI engaged in the conduct under the guise of a business, using contracts, creating advertising, and charging clients, does not negate their intent or render it irrelevant.  To wit, CHEN and LI are guilty because they agreed to commit, or cause to be committed, the fraudulent acts (submitting the falsified applications) and they did so with the requisite knowledge (knowing

14

that a Form I-20 would issue as a result of the fraud).  Defendant's attempt to make his guilty knowledge somehow irrelevant--the basis of his entire attack on the conspiracy charge--should be rejected. Defendant is guilty of the conspiracy charge.

## IV.   DEFENDANT CHEN IS GUILTY OF AGGRAVATED IDENTITY THEFT, AS CHARGED IN COUNT TWENTY-ONE

The parties agree on the elements of aggravated identity theft: (1) defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) the defendant did so during and in relation to a violation of 18 U.S.C. § 1546(a), as charged in Count Ten.  United States v. Doe, 842 F.3d 1117, 1119-20 (9th Cir. 2016); Flores-Figueroa v. United States, 556 U.S. 646 (2009); Ninth Circuit Criminal Jury Instruction No. 8.83 (2022).  Defendant does not contest that the government proved the first two elements beyond a reasonable doubt.  Defendant's sole challenge is that there was insufficient evidence that he transferred, possessed, or used Tong Jin's means of identification "during and in relation to" a violation of § 1546.

Defendant's attack on this count is premised on the same erroneous assumptions as his attacks on the conspiracy and individual fraud counts.  He asserts that the government was required to prove that he used, possessed, or transferred Jin's means of identification "during and in relation to" an application or request for an I-20, as opposed to during the admissions application process.  (Def. Opp. 25-26.)  As explained above, defendant committed the substantive offense of immigration document fraud if he knowingly submitted, or willfully

1  caused to be submitted, a fraudulent college admissions application

2  in Tong Jin's name, knowing that she would obtain an I-20 as result.

3      Defendant does not dispute that the government proved beyond a

4  reasonable doubt that he knowingly submitted an admissions

5  application to NYU in Tong Jin's name that contained a fraudulent

6  transcript and TOEFL score[2] with her real identifying information, or

7  that he knew Jin would be issued an I-20 upon acceptance.  That

8  suffices to show that defendant used and possessed Jin's means of

9  identification "during and in relation to" the crime of immigration

10  document fraud.

11      In any case, contrary to defendant's characterization of the

12  record, the government proved beyond a reasonable doubt that CHEN

13  used Jin's means of identification "during and in relation to"

14  requesting an I-20 for her.  Specifically, defendant CHEN used the

15  names of Tong Jin and her parent, Xiaoliang Jin, on a financial

16  affidavit that was submitted to NYU on December 7, 2016,[3] <u>after</u> she

17

18      [2] Defendant mistakenly contends that NYU did not require a
passing TOEFL score for admission.  (Def. Opp. 27-28.)  Because her
19  application showed that she attended high school in China (Tr. Ex.
133), Jin was "required to submitted TOEFL/IELTS scores," with a
20  "recommended score [of] 100" (Tr. Ex. 100A).  Thus, although the Form
I-20 issued by NYU stated that English proficiency was not required,
21  Jin was required to submit a TOEFL score as a condition of admission.

22      [3] Although defendant points out that the indictment alleged that
the aggravated identity theft crime took place "[o]n or about
23  September 29, 2016," which is the date that defendant CHEN submitted
Jin's admissions application to NYU (Dkt. 1 at 12; Def. Opp. 26), "it
24  is not necessary for the government to prove that the offense was
committed precisely on the date charged," only "that the offense was
25  committed on a date reasonably near the date alleged in . . . the
indictment."  Ninth Circuit Model Criminal Jury Instruction No. 3.18
26  (2022); <u>see</u> <u>United States v. Loya</u>, 807 F.2d 1483, 1493-94 (9th Cir.
1987) (approving similarly worded "on or about" jury instruction).
27  It is thus proper for the Court to consider evidence of defendant's
use of Tong Jin's means of identification in a document submitted
28  less than three months after the date specified in the indictment to
the same school as Jin's fraudulent admissions application.

had already accepted for admission.  (Tr. Ex. 28 at 1; Tr. Ex. 144 at 3.)  As explained in the government's opening brief, this financial affidavit was a requirement specifically for getting a Form I-20, not admission.  (Gov. PFFCL 5; Dkt. 164 at 31:8-24.)  Thus, defendant is guilty of aggravated identity theft even under his own mistaken reading of the statute.

Nor was the government required to prove that Crystal Kim, who took the TOEFL exam in Jin's name at the direction of co-conspirators working with LI and CHEN, used those means of identification in connection with applying for an I-20.  The government proved beyond a reasonable doubt that defendant transferred Jin's means of identification to a co-conspirator for the purpose of facilitating a fraudulent TOEFL score in her name.  (See Gov. PFFCL 33-35, 106-107.) Defendant's transfer of Jin's means of identification "furthered and facilitated" the fraud because it ensured that Kim could pass herself off as Jin during the exam.  United States v. Gagarin, 950 F.3d 596, 604-05 (9th Cir. 2020).  Defendant submitted the TOEFL score that Kim achieved in Jin's name as part of her application to NYU, knowing it was fraudulent and that Jin would get an I-20 if accepted.  Thus, defendant's transfer of Jin's means of identification was "during and in relation" to immigration document fraud.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court enter the government's proposed findings of fact and conclusions of law and find defendant CHEN guilty of all counts.